**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

FN:CWE/LM/DIB
F. #2025R00201

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 30, 2026

By Email and ECF

The Honorable Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Francisco Manuel Bermúdez Cagua, et al.
Criminal Docket No. 25-114 (S-1) (FB)

Dear Judge Kuo:

Since in at least 2016, the defendant Francisco Manuel Bermúdez Cagua, also known as “Churrón,” (“Bermúdez Cagua”) has helped coordinate large-scale, multi-ton, drug trafficking operations from Ecuador to the United States and other countries. During this period, the defendant has been one of the highest-ranking leaders of a Foreign Terrorist Organization (“FTO”) and one of Ecuador’s most prolific and violent transnational criminal organizations, “Los Choneros.” The defendant is also not a United States citizen and has no known direct ties to this country. Thus, for the reasons set forth below, the Court should enter a permanent order of detention, as no condition or combination of conditions of release can assure the safety of the public or the defendant’s appearance at trial. The government respectfully submits that the Court should therefore enter a permanent order of detention pursuant to Title 18, United States Code, Section 3142(e).

## I. Background

### A. Bermúdez Cagua’s Role as a Top Lieutenant of Los Choneros[1]

For years, the defendant has been a member and a high-ranking leader of Los Choneros, an FTO and one of Ecuador’s most violent and powerful transnational criminal

---

[1] As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a Permanent Order of Detention. See United States v. LaFontaine, 210

organizations. Indeed, Los Choneros is responsible for significant drug trafficking into the United States, as well as firearms trafficking from the United States to Ecuador and elsewhere, and acts of extreme violence. As such, Los Choneros has been sanctioned by the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC).

For years, the defendant helped lead this terrorist and transnational criminal organization, along with his two co-defendants and former top Los Choneros leaders José Adolfo Macías Villamar, also known as "Fito," and Darío Javier Peñafiel Nieto, also known as "Topo." Fito and Topo have previously been extradited to the Eastern District of New York and are currently detained pending trial. At the defendant's and his co-conspirators' direction, Los Choneros operated a vast criminal network responsible for the shipment of multi-ton quantities of cocaine from South America through Central America and Mexico to the United States and elsewhere. Drug seizures destined for distribution in the United States and traced to Los Choneros and the defendant—including those specifically charged in the Superseding Indictment, among countless others—have become routine for Los Choneros in the recent past.

In addition, Los Choneros has been involved in drug trafficking in Ecuador since the 1990s and is a key driver of the escalating violence that has plagued Ecuador since 2020. For example, Los Choneros worked with Mexican cartels, including the Sinaloa cartel, to transport cocaine from Colombia through Ecuador onto Mexico. This partnership was extremely profitable for Los Choneros and enabled the organization to grow in terms of membership, notoriety and wealth. With support from the Sinaloa Cartel, Los Choneros gained control of key cocaine trafficking routes through Ecuador.

The leaders of Los Choneros, including Bermúdez Cagua, employed members who carried out numerous acts of violence. Bermúdez Cagua and other leaders directed and ordered these acts of violence to further the goals of the organization. In furtherance of their criminal activities and drug trafficking operations, Los Choneros and their confederates relied on "sicarios," or hitmen, as well as corruption and bribe payments, to ensure protection and loyalty to Los Choneros. At the direction of Los Choneros' leaders, including Bermúdez Cagua, Los Choneros committed violent acts towards law enforcement, Ecuadorian politicians, attorneys and prosecutors and civilians. Their "sicarios" regularly used military-grade weapons, like machine guns, AK-47s and grenades, to perpetrate violence, including murder, torture, and kidnapping.

B. Bermúdez Cagua's Prison Escape

In January 2024, Bermúdez Cagua's co-defendant Fito and former highest-ranking leader of Los Choneros, escaped from an Ecuadorian prison a second time—just two

---

F.3d 125, 130–31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995). This proffer seeks only to articulate facts sufficient to justify detention; thus, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

days ahead of his planned move to a maximum-security facility. In response to his escape, Ecuador erupted in violence—including prison riots, gang attacks, kidnappings and bombings—and the government of Ecuador was forced to declare a 60-day state of emergency. Armed with firearms, grenades and dynamite, members of Los Choneros raided an Ecuadorian television studio during a live broadcast and held numerous journalists hostage. Los Choneros obtained many of these firearms and weapons by illegally trafficking and smuggling them from the United States.

The defendant, who had spent time in prison in Ecuador with Fito and who led the terrorist organization along with Fito from inside prison, also escaped from Ecuadorian custody in 2024, shortly after Fito's escape. The defendant had been convicted of murder in Ecuador in or about 2018, and he was serving a sentence of 40 years' imprisonment when he escaped custody in 2024. Ecuadorian authorities subsequently recaptured the defendant in July 2026. Before his recapture, on December 11, 2025, the U.S. State Department's Narcotics Reward Program announced the offering of a reward of up to $5 million dollars for information leading to the arrest and/or conviction of Bermúdez Cagua. The defendant is also an Ecuadorian national with no legal status in the United States.

### C. The Superseding Indictment

On June 27, 2025, a grand jury sitting in the Eastern District of New York returned a seven-count Superseding Indictment charging the defendant, Fito and Topo. The defendant is charged in three counts: international cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii), and 959(d) (Count One); international cocaine distribution of cocaine, in violation of Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii) (Count Four); and use of firearms in furtherance of drug trafficking, in violation of Title 18, United States Code, Sections 924(c) (Count Five). Each of these three counts carries a mandatory minimum term of imprisonment of ten years.

## II. Bermúdez Cagua Should be Detained Pending Trial

### A. The Bail Reform Act and Applicable Law

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a federal court must order a defendant detained pending trial where it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A presumption of dangerousness and risk of flight arises when, as here, a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). Standing alone, a grand jury's indictment is sufficient to establish probable cause. See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

In light of this applicable presumption, the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3124(e)(3). The defendant may rebut this presumption by coming "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If the defendant satisfies his burden of production, the government retains the burden of persuasion to demonstrate by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight. See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. See 18 U.S.C. § 3142(g). Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption remains a factor for the Court to consider. Mercedes, 254 F.3d at 436.

## V. The Detention Presumption Applies in This Case

The facts and circumstances of this case compel Bermúdez Cagua's detention, as all four factors set forth in the Bail Reform Act show that he poses a danger to the community. Further, this case involves offenses for which, under the law, there is a presumption that no condition or combination of conditions will reasonably assure Bermúdez Cagua's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3). Specifically, because Bermúdez Cagua is charged with multiple counts under the Controlled Substances Import and Export Act for which the maximum term of imprisonment is life, he is both presumed to pose a danger to the

community and a risk of flight. Accordingly, Bermúdez Cagua bears the initial burden of showing that he is not a danger to the community or a flight risk. Because the defendant cannot sustain that burden, the Court should enter an order of permanent detention.

## VI. The Defendant Is a Clear Danger to the Community

The facts and circumstances of this case compel the defendant's detention, as the relevant Bail Reform Act factors show that he poses an extraordinary danger to the community. The counts with which the defendant is charged—participating in an international narcotics importation and distribution conspiracy and carrying firearms in furtherance of that conspiracy—are extremely serious. The defendant cannot rebut the presumption of detention, as explained above, and every § 3142(g) factor independently requires detention.

The nature and circumstances of the offense are as serious as federal narcotics cases get. The defendant did not merely take part in a drug conspiracy; he helped lead Los Choneros, a foreign terrorist organization and one of the most powerful and violent transnational criminal organization in the world. With the defendant's help, Los Choneros moved multi-ton quantities of cocaine into the United States and used firearms and violence (including kidnapping and murder) to further their criminal goals. Section 3142(g) singles out offenses involving controlled substances and firearms for exactly this reason. The defendant sat near the top of a sophisticated, well-funded criminal organization. He, along with his co-defendants, directed large-scale narcotics shipments, ordered violence, and intimidated civilians and witnesses through subordinates and other members of Los Choneros.

A defendant like Bermúdez Cagua with vast resources, armed personnel, and networks of corrupt officials, poses a continuing danger. Moreover, the defendant's prior murder conviction further shows his willingness to use ruthless and lethal violence. Pre-trial conditions cannot neutralize that danger, because he could keep directing violence and trafficking through other individuals. Releasing him would put witnesses, victims, and the public at serious risk of harm. Therefore, because no combination of release conditions can adequately protect the community from the defendant, he should be ordered detained pending trial.

## VII. Bermúdez Cagua Poses a Significant Risk of Flight

Moreover, no condition can reasonably assure the defendant's appearance in court. Simply, he is a significant flight risk. First, the defendant has no known direct ties to the United States and has been brought to the United States for the sole purpose of facing criminal prosecution. He has no legal status in this country. Given his non-existent ties to the United States (aside from his narcotics and firearms activities) and his extensive ties to Ecuador and drug cartels, the defendant poses a significant risk of flight.

Second, the defendant's own history shows that no condition of release can reasonably assure his appearance. As noted above, while serving a 40-year sentence for murder in Ecuador, the defendant escaped from custody (following the footsteps of his co-defendant Fito, who had recently escaped from Ecuadorian custody for the second time). Section

3142(g)(3) directs the Court to consider a defendant's history and record of appearance. Few facts bear more directly on that inquiry than escaping from prison. A secure custodial facility is far more restrictive than any condition this Court could impose, and the defendant already defeated that. If prior custody could not hold him, an ankle monitor and a promise to appear will definitely not be enough to ensure his appearance.

The defendant also has every incentive and every means to flee again. He faces a mandatory minimum of ten years and a potential life sentence on the narcotics counts, in addition to a mandatory consecutive sentence on the § 924(c) count. See 21 U.S.C. § 960(b)(1); 18 U.S.C. § 924(c)(1)(A). The prospect of spending the rest of his life in federal prison gives him a powerful motive to flee. And he has no lawful status or family ties to this country; his ties are overwhelmingly to Ecuador, where his organization has vast power and control. The defendant also has access to the vast wealth generated by many years of drug trafficking, along with networks of safe houses, corrupt officials, and armed personnel who can, once again, help him escape and hide him once he does. No financial condition can secure the appearance of a defendant with access to that kind of money, and no surety can stand in for an organization that has already broken him out of prison once.

## III. Conclusion

For the foregoing reasons, the government respectfully requests that the Court order the defendant to be detained pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Chand Edwards-Balfour
Lorena Michelen
David Berman
Assistant U.S. Attorneys
(718) 254-7000